UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JORGE ROJAS,** on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br>v.<br><br>**GUARDIAN LITIGATION GROUP, LLP**<br><br>*Defendant*. | Civil Case No.: 25-cv-10342 |

**PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

**Introduction**

Defendant Guardian Litigation Group, LLP seeks to avoid accountability for clear violations of the Telephone Consumer Protection Act (TCPA) by attempting to shift the focus from its conduct to Plaintiff's credibility, and by advancing extra-pleading denials in an affidavit. Guardian argues that it does not place telemarketing calls, that it does not own or control the callback number that Plaintiff dialed, and that Plaintiff has suffered no cognizable injury. These arguments not only misstate the law but also ignore the detailed factual allegations in the Complaint (ECF No. 1) and the corroborating sworn declaration submitted by Plaintiff Jorge Rojas. *See* Exhibit 1.

The TCPA was enacted to curb unwanted, invasive telemarketing practices, particularly prerecorded calls to consumers' personal cell phones without consent. Plaintiff's allegations fit squarely within the heartland of conduct Congress sought to prevent. Plaintiff alleges that he received an unsolicited prerecorded voicemail from a number he did not recognize, directing him to call back a specific toll-free number. When he did so, he was funneled directly to Guardian's intake department. There, a Guardian representative provided him with a retainer agreement on Guardian's letterhead and bearing Guardian's logo. These facts directly tie the unlawful solicitation to Guardian itself. Plaintiff would never have been connected with Guardian, nor received Guardian's retainer, absent the illegal prerecorded voicemail.

Guardian attempts to sidestep these allegations by presenting its own affidavit and arguing that Plaintiff must plead more details than Rule 8 requires—such as the identity of each intermediary vendor or the ownership records for the callback number. But courts have consistently rejected such heightened pleading requirements, recognizing that demanding this information at the outset would immunize defendants who hide behind lead generators and shell

entities. The law requires only that a plaintiff plead sufficient facts to make it plausible that the defendant initiated the unlawful call. Plaintiff has met and exceeded that burden here.

Guardian also challenges Plaintiff's standing, contending that unwanted calls cause no concrete injury and pointing to Plaintiff's history of other TCPA litigation. That contention is foreclosed in this Circuit: the Seventh Circuit holds that unwanted automated communications cause concrete Article III injury because they are akin to the common-law tort of intrusion upon seclusion and impose nuisance and time-loss harms. *See Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 462–63 (7th Cir. 2020) (Barrett, J.) (collecting authority and confirming that unwanted automated messages are a concrete injury).

In sum, Guardian's motion rests on mischaracterizations of the Complaint, improper reliance on extrinsic evidence, and legal arguments already rejected by courts across the country—and by binding Seventh Circuit precedent on standing. Plaintiff has alleged in detail how a prerecorded call led directly to Guardian's intake and retainer process. These allegations suffice to state a claim for direct TCPA liability. For these reasons, and those set forth more fully below, Guardian's motion should be denied.

**Background**

On August 14, 2025, Plaintiff Jorge Rojas's cellular phone displayed an incoming call from 770-741-9525. He did not answer. Instead, the caller left a prerecorded voicemail that advertised a loan product and instructed Plaintiff to call back a different number, (833) 775-2726. (ECF No. 1 ¶¶ 19-21.) Later that day, at approximately 5:40 p.m. Central Time, Plaintiff returned the call in order to identify the source of the unsolicited message. (ECF No. 1 ¶ 22.) When he dialed the callback number, he was connected not to a generic answering service but directly to Guardian's intake process. (ECF No. 1 ¶¶ 23-24.).

2

Plaintiff was transferred to an intake representative named "Oleg." (ECF No. 1 ¶ 25.) Oleg proceeded to provide Plaintiff with a retainer agreement identifying Guardian Litigation Group, LLP, a Texas limited liability partnership, and the agreement prominently displayed Guardian's logo and branding. (ECF No. 1 ¶¶ 26-28.) The sequence was seamless: a prerecorded telemarketing voicemail funneled Plaintiff to Guardian's own intake system and culminated in Guardian's branded retainer. (ECF No. 1 ¶ 29.).

Plaintiff has sworn that he would not have received Guardian's retainer but for the unlawful prerecorded voicemail and callback sequence. *See* Exhibit 1, Rojas Decl. ¶¶ 17–19.) He further attests that the retainer agreement he received bore Guardian's logo identical to that displayed on Guardian's website and was transmitted directly by a Guardian intake representative named "Oleg." (Rojas Decl. ¶ 18.) These sworn facts confirm that the prerecorded voicemail funneled Plaintiff straight into Guardian's intake process, tying the illegal call directly to Guardian's solicitation and retainer acquisition.

These calls disrupted Plaintiff's day, required him to spend time listening to and investigating the voicemail, and invaded his privacy by delivering an unwanted solicitation to his personal cell phone. (ECF No. 1 ¶ 30.) He explicitly states that the calls caused him annoyance, nuisance, and an invasion of privacy, all harms recognized by Congress and the courts as actionable under the TCPA.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency—not the truth—of a complaint's allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the Court must accept all well-pleaded factual allegations as true and draw every reasonable inference in Plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A complaint need

only allege enough facts to make relief plausible, not probable, and "plausibility" is a context-specific standard guided by judicial experience and common sense. *Iqbal*, 556 U.S. at 679. In TCPA cases, courts have repeatedly held that allegations identifying the time, nature, and content of the unlawful call, coupled with facts linking the call to the defendant, satisfy Rule 8's requirements.

**Argument**

**I.     Plaintiff's well-pleaded facts plausibly establish direct TCPA liability.**

In this District, courts have long recognized that plaintiffs need not identify the exact dialer or intermediary to state a TCPA claim. *See Toney v. Quality Res., Inc.,* 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) (St. Eve, J.) (rejecting the argument that plaintiff had to specify the precise entity that dialed the calls where allegations plausibly tied the conduct to the defendant). Indeed, "other courts in this district have found the pleading standard satisfied when a TCPA plaintiff could describe anything about the circumstances of a call or message contributing to his belief it was prerecorded." *Taylor v. Kin Ins., Inc.,* 2025 U.S. Dist. LEXIS 109673, *2-3 (N.D. Ill., June 10, 2025) (Perry, J.). The Complaint here does far more than the typical TCPA case, specifically identifying Guardian through the callback funnel, live intake representative, and retainer agreement.

The Complaint alleges a straightforward and detailed sequence of events that directly ties Guardian to the unlawful prerecorded solicitation. On August 14, 2025, Plaintiff's cellular phone received a call from 770-741-9525. He did not answer, and a prerecorded voicemail was left advertising a loan product and instructing him to return the call to a toll-free number, (833) 775-2726. (ECF No. 1 ¶¶ 19–21.) Later that same day, at approximately 5:40 p.m. Central Time, Plaintiff returned the call for the sole purpose of identifying the source of the message. Rather

4

than reaching a generic line, he was immediately connected to Guardian's intake process. (ECF No. 1 ¶¶ 22–24.) There, Plaintiff spoke with a Guardian representative named "Oleg," who proceeded to send Plaintiff a retainer agreement expressly identifying "Guardian Litigation Group, LLP" as the contracting party and bearing Guardian's logo and branding. (ECF No. 1 ¶¶ 25–28.) Plaintiff alleges that he would not have received Guardian's retainer but for the prerecorded solicitation and callback sequence. (ECF No. 1 ¶ 29.) These allegations leave no ambiguity about the source of the call: the unlawful prerecorded voicemail served as the entry point to Guardian's own client intake process.

These facts are more than sufficient to support a plausible inference of direct liability. They provide dates, times, caller IDs, the prerecorded nature of the message, the callback number, the identity of the Guardian representative, and the Guardian retainer itself. (ECF No. 1 ¶¶ 19–28.) Rule 8 requires no more. Whether Guardian itself dialed the call, employed a vendor, or used an intermediary system is a matter for discovery. At the pleading stage, the well-pleaded allegations demonstrate a continuous sequence in which the prerecorded voicemail immediately and purposefully connected Plaintiff to Guardian's services.

Courts have consistently held that such allegations suffice to state a plausible claim of direct TCPA liability. *See e.g. Smith v. American-Amicable Life Insurance Co. of Texas*, No. 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) (allegations that plaintiff was told he was "speaking with American-Amicable" and offered insurance benefits sufficient to state a claim); *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action"); *Chinitz v. Intero Real Estate Services*, No. 18-cv-05623, 2021 WL 1375837, at *5 (N.D. Cal. Apr. 12, 2021) (holding

that allegations that sales associates identified the defendant's real estate company during telemarketing calls supported a plausible inference of direct liability). These decisions confirm that Plaintiff's well-pled factual allegations more than clear the Rule 12(b)(6) plausibility threshold and distinguish this case from the authorities Defendant relies on.

Although Plaintiff must allege either a direct or vicarious liability theory of TCPA liability, the bar for the Plaintiff is not as high as the Defendant makes out. As another court recently held while denying a similar motion to dismiss:

> Alleviate is right about the legal requirement, but wrong that the complaint is insufficient to satisfy it at the motion-to-dismiss stage. The complaint alleges that Mr. Scofield received a call and a resulting voicemail that urged him to call a number, and that the person who answered that number identified "his company" as Alleviate. Doc. 1 ¶¶ 22-27. Taking these allegations as true, as I must at this stage, and making all reasonable inferences in favor of Mr. Scofield, as I also must at this stage, this is sufficient to allow a reasonable juror to infer that Alleviate was responsible for—that is, made or initiated—the call. . . . Phone numbers are easily spoofed, and making a call appear to come from a number other than the one belonging to the actual caller is hardly unheard-of, especially in the robocalling world. Likewise, the argument that there is nothing to support the claim that the call was made by an agent of Alleviate is unpersuasive. The allegation is that the person who answered the number left in the robocall's voicemail said that he was doing so on Alleviate's behalf.

*Scofield v. Alleviate Tax LLC*, No. 1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18, 2025). Thus, Plaintiff's allegations far exceed this bar and courts have similarly held as much. *See e.g. Escano v. Symmetry Fin. Grp. of N.C., LLC*, No. 2:21-cv-0884, 2022 WL 2072875, at *5 (D.N.M.) (denying motion to dismiss in TCPA case holding, "Escano's allegations that the calls were all related to "life and health insurance" and that the content of the calls "was substantially similar enough that a reasonable person would identify the communications as coming from the same entity or group of entities.")

Defendant advances the same faulty legal standard as the defendant in *Scofield*, reasoning that the Plaintiff's well-pled allegations connecting the caller, calls, and their stated and admitted

6

purpose are insufficient to demonstrate a theory of direct liability at the pleadings stage. Plaintiff's complaint doesn't adopt a flawed either/or pleading approach, either. All the Plaintiff has pled, consistent with case law on direct liability TCPA matters, is that discovery *might* reveal third parties who could also be directly liable. For example, Defendant's employee may be personally liable under the TCPA, still consistent with direct liability. Defendant's related argument that Plaintiff insufficiently pleads direct liability by pleading in the alternative, as discovery may reveal, is unavailing, as it is permitted by the Rules. FED R. CIV. P. 8(d)(2), (3). Pleading in the alternative in no way undermines the well-pled allegations in the complaint and evidence, as well as the Defendant's own admission, that the Defendant directly was involved in the calls.

Fortunate for consumers bombarded with telemarketing calls, other Courts have similarly held that the allegations are sufficient. *See, e.g., Taylor v. Suntuity Solar L.L.C.*, No. 8:23-cv-00694, 2024 WL 964199, at *6 (M.D. Fla. Mar. 6, 2024) ("Plaintiff's allegations are sufficient to plead a claim for Defendant's direct liability under the TCPA at this stage . . . Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' . . . Plaintiff further alleges: 'During both calls, Plaintiff was initially provided a generic, fake name, solar of America' . . . 'The only real company identified during the calls was Suntuity.'") (cleaned up); *Stemke v. Marc Jones Constr., LLC*, No. 5:21-cv-274-30, 2021 WL 4340424, at *2 (M.D. Fla. Sep. 23, 2021) ("Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls. For example, Sunpro argues that Plaintiff fails to 'support' a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received

7

because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls.").

A similar argument was rejected in *Cunningham v. Watts Guerra*, LLP. No. SA-22-CV-363, 2023 WL 2558134, at *12 (W.D. Tex. May 23, 2024). In *Watts Guerra*, as here, the defendant attempted to argue that the plaintiff did not sufficiently allege direct liability for illegal calls which resulted, as here, in the plaintiff receiving a signed retainer agreement from the defendant. The Court explained that the possession of a signed agreement was sufficient to give rise to an inference of direct liability for the calls:

> Defendants argue that, while Plaintiff does allege he received automated calls from a rotating series of phone numbers, he "makes no allegation that any particular Defendant . . . made, or directed to be made, these calls." Without such specificity, Defendants contend, Plaintiff failed to state a plausible claim against any of the Defendants for a TCPA violation. . . . Plaintiff responds that, while "unable to identify which of the Defendants [in particular] placed, or caused to be placed, the robocalls," he did eventually "identify Defendants as the entities responsible for those robocalls." Plaintiff argues that his allegation of Defendants' joint involvement "is supported by . . . the retainer attached to the complaint, and the follow-up communications thereafter."
>
> Given Plaintiff's allegations that he was solicited by robocallers to file a Camp Lejeune claim, that the callers refused to identify themselves or the law firms on whose behalf or for whose benefit they were calling unless Plaintiff agreed to file such a claim, and in light of the documents Plaintiff received from WG LLC, Biltmore, Boxer, and Henson after agreeing (under a pseudonym) to file said claim, the Court should find that Plaintiff has raised a plausible claim against these Defendants.

*Watts Guerra*, 2024 WL 3100773, at *12-13 (cleaned up)

The Court in *Watts Guerra* also went on to explain why the "defendants' argument," identical to the one here that more specificity is required at the pleadings stage, was "untenable." *Id.* at *13. It stated, "To require more would effectively immunize savvier TCPA violators from liability—i.e., those with the wherewithal and means to use middlemen—or a series of

8

increasingly removed middlemen—to solicit business through prohibited robocalling operations. Or, as Plaintiff put it, "Defendants' argument, if tenable, would reward robocallers for attempting to obfuscate their identity in order to prevent TCPA liability." *Id.* (cleaned up). The presence of a Guardian-branded retainer, sent directly after Plaintiff followed the instructions in the prerecorded voicemail, is not merely suggestive—it is dispositive at the pleading stage.

Taken together, Plaintiff's allegations go well beyond speculative or conclusory pleading. They describe with specificity the who, what, when, where, and how of Guardian's telemarketing funnel: the prerecorded voicemail, the callback number, the live intake representative, and the Guardian-branded retainer that followed. Courts across jurisdictions have repeatedly held that these kinds of allegations—where a prerecorded call leads seamlessly into the defendant's intake process and results in the defendant's own documents being provided—are more than sufficient to plead direct liability. To demand more at this stage would improperly heighten the pleading standard and reward defendants who conceal their role through intermediaries. Guardian cannot insulate itself from liability simply by disputing ownership of the callback number or by pointing to potential middlemen, when the Complaint plausibly alleges that Plaintiff was funneled straight from a prerecorded solicitation to Guardian's intake and retainer.

In support of its motion, Guardian attaches a declaration disputing ownership of the callback number and asserting facts contrary to the Complaint. (See Def. Ex. A, Greenway Decl.) But courts cannot consider such factual denials on a Rule 12(b)(6) motion. See *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("Affidavits or other evidence outside the pleadings are inappropriate at the motion-to-dismiss stage."). Guardian's factual contentions

9

may be tested in discovery or on summary judgment—but they cannot defeat well-pleaded allegations that must be accepted as true at this juncture.

In sum, this Court can more than plausibly infer that the Defendant is directly liable for the calling conduct described in the complaint on the bases alleged as other courts have done with far less. *See, e.g.*, *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 280 (S.D.N.Y. 2024) (holding plaintiff adequately pled direct liability when the plaintiff received calls identifying the defendant); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014); *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *4 (E.D. Pa. July 21, 2021); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *3 (D.N.J. Jan. 11, 2023).

In short, Plaintiff's detailed factual allegations and supporting declaration easily satisfy Rule 8's plausibility standard and tie Guardian directly to the unlawful prerecorded solicitation. The Complaint alleges a continuous, documented sequence connecting the robocall to Guardian's intake process and branded retainer, which courts across jurisdictions have found sufficient to plead direct liability. Guardian's contrary arguments merely raise factual disputes that must be resolved through discovery—not on a motion to dismiss.

## II. Plaintiff adequately pleads Article III injury

Congress enacted the TCPA to curb the "proliferation of intrusive, nuisance calls to consumers and businesses alike." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 141 S. Ct. 1163, 1167 (2021) (quotation omitted). The record before Congress revealed that "advances in automated technology made it feasible for companies to execute large-scale telemarketing campaigns" that could reach thousands—if not millions—of households and businesses within short periods of time, "dramatically increas[ing] customer contacts" without the expenditure of significant human

10

labor. *Id.* Telemarketers no longer needed teams of live operators to place calls. Instead, machines equipped with "robocall" capabilities could dial numbers automatically and deliver scripted messages using artificial or prerecorded voices, thereby "obviating the need for live human callers altogether." *Id.* As the Supreme Court later recognized, such calls were "rightly regarded by recipients as an invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S. Ct. 740, 745 (2012).

Guardian contends that Plaintiff suffered no cognizable injury. That contention is foreclosed by binding precedent. The Seventh Circuit holds that "unwanted automated communications inflict a concrete injury in fact" analogous to the common law tort of intrusion upon seclusion. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462–63 (7th Cir. 2020). As the *Gadelhak* court elaborated, the very act of a phone ringing or buzzing with an unsolicited automated message is itself an intrusion into one's peace and quiet. It compels attention, disrupts focus, and forces the individual to deal with an unwanted interruption. This harm is compounded by the nuisance of wasted time: the recipient must answer or retrieve the message, listen to or investigate its content, and then take steps to delete, block, or otherwise respond. *Id.* at 463–64. The Court explicitly relied on the Restatement (Second) of Torts § 652B, which recognizes liability for "intentionally intruding, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns." Congress's legislative findings likewise confirm that telemarketing calls are a modern manifestation of that same harm, repeatedly identifying them as a "nuisance" and "invasion of privacy." Here, Plaintiff's allegations fall squarely within this framework. He specifically asserts that the unsolicited voicemail disrupted his day, compelled him to expend time and effort listening to and investigating the call, and caused him annoyance, frustration, and a sense of invasion of privacy. (ECF No. 1 ¶ 30.) These are precisely the kinds of

11

harms the TCPA was designed to prevent and that courts have consistently recognized as concrete and particularized injuries sufficient to support standing.[1]

The injury is also fairly traceable to Guardian's conduct. The prerecorded voicemail directed Plaintiff to call a number that funneled him directly to Guardian's own intake representative and retainer materials (Ex. 1 ¶¶ 17–19). The TCPA's private right of action provides statutory damages that redress precisely this type of privacy intrusion. Accordingly, Plaintiff satisfies all three elements of Article III standing: concrete injury, causation, and redressability.

In short, Plaintiff has alleged precisely the kind of concrete injury that Congress and the courts have recognized as flowing directly from the unlawful use of automated telemarketing technology. The TCPA was designed to prevent these very harms, and Plaintiff's allegations track the statutory and common-law understandings of injury. Guardian's argument therefore fails.

Guardian's suggestion that Plaintiff's history of filing other TCPA actions negates standing fails as a matter of law. The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants careful scrutiny. *Outley v. New York*, 837 F.2d 587, 591-92 (2d Cir. 1988). "[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017). *See also Moore v. Club Exploria, LLC*, No. 19 C 2504, 2023 U.S. Dist. LEXIS 144183, at *18 (N.D. Ill. Aug. 17, 2023) ("However, the Seventh Circuit has said that frequent litigators may be better able to

---

[1] As detailed in Plaintiff's sworn declaration (Ex. 1 ¶¶ 14–22), the unsolicited prerecorded voicemail interrupted Plaintiff's day, compelled him to stop what he was doing to review the message, return the call to identify the source, and contend with the unwanted solicitation.

12

manage the litigation, so that is not a disqualification" ); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."); *Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at *16 (W.D. Pa. July 31, 2018) ("As other courts addressing this issue have agreed, a citizen's decision to aggressively enforce his rights under the TCPA should not negate otherwise valid privacy interests").

Merely because Mr. Rojas is able to identify those who placed calls to him illegally does not deprive him of harm or standing any more "than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) (denying motion for summary judgment in TCPA case related to a similar standing argument). While the Defendant is "understandably frustrated" by the fact they are being sued, he is doing "exactly what Congress intended—enforcing the law." *Id.* Congress was well aware of this possibility when it passed the TCPA, and no general rule requires plaintiffs who prove their cases to end up worse off than before the defendant injured them. Thus, courts reject such irrelevant and dangerous attacks on plaintiffs who bring multiple actions and engage in investigative tactics to stop robocalls:

> The determinative issue, then, is not Cunningham's motivations, but whether he was injured. An ordinary consumer who pled the facts that Cunningham has pled would have established a concrete and particularized injury-in-fact based on the Defendants' intrusion upon his rights to privacy and seclusion. Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited those rights because the calls alleged were not truly unwanted. Insofar as Stoops endorses such a result, this Court disagrees. It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line

> of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes.

*Cunningham*, 251 F. Supp. 3d at 1196 (citation omitted) (noting that most people would accept $500 or more in exchange for enduring the privacy violation of a single robocall). Like the defendants in *Cunningham*, Defendant "seem[s] to imagine a Constitution that limits the right to sue under the TCPA to those who are *ignorant* of their right to sue under the TCPA." *Id.* "The Constitution requires no such result." *Id.*

In sum, Plaintiff has alleged a concrete, particularized, and traceable injury of the very type Congress sought to prevent through the TCPA. The statute protects consumers' privacy and time from the precise intrusion alleged here, and binding precedent confirms that such unwanted prerecorded calls confer Article III standing. Guardian's effort to recast a recognized privacy invasion as a harmless annoyance ignores both the statutory purpose and controlling authority, and its argument must therefore be rejected.

**Conclusion**

Guardian's motion seeks to convert a straightforward pleading issue into a factual dispute, and in doing so, it ignores both the liberal notice-pleading standard of Rule 8 and the remedial purposes of the TCPA. Plaintiff's allegations—corroborated by his sworn declaration—describe in detail how an unsolicited prerecorded voicemail led directly to Guardian's intake representative and a Guardian-branded retainer. Those facts alone plausibly establish direct liability at this stage. Courts across the country, including within this District, have repeatedly denied motions to dismiss where the plaintiff alleged a continuous telemarketing funnel leading to the defendant's own services or materials. This case fits squarely within that settled framework.

Guardian's attempt to rely on its own affidavit and factual denials underscores that its arguments are premature. The Defendant disputes facts—not law—and such disputes must be resolved through discovery, not by dismissal. Whether Guardian itself placed the call or acted through a vendor is a quintessential fact question that cannot be resolved under Rule 12(b)(6). At this stage, Plaintiff need only allege facts that make liability plausible, not prove them by evidence.

Guardian's standing challenge fares no better. The Seventh Circuit and every other circuit to consider the question have held that unwanted telemarketing calls cause concrete injury by invading privacy, consuming time, and disrupting daily life. Plaintiff's experience exemplifies precisely those harms. The notion that his prior enforcement of the TCPA somehow deprives him of standing has been uniformly rejected by courts, which recognize that consumers who repeatedly invoke the statute are doing exactly what Congress intended—deterring illegal robocalls and enforcing statutory privacy rights.

At bottom, Guardian seeks dismissal not because the Complaint is deficient, but because it disagrees with the well-pleaded facts. The TCPA was enacted to hold accountable those who use or benefit from automated calling systems that invade personal privacy. Plaintiff's allegations and declaration plausibly and specifically tie Guardian to that conduct. Nothing more is required at the pleading stage. For all the foregoing reasons, and those discussed above, Defendant's Motion to Dismiss should be denied in its entirety.

DATED this 19th day of October, 2025.

                                                   By: */s/ Anthony I. Paronich*

                                                   Anthony I. Paronich
                                                   anthony@paronichlaw.com
                                                 PARONICH LAW, P.C.
                                                 350 Lincoln Street, Suite 2400
                                                 Hingham, Massachusetts 02043
                                                 Telephone: (617) 738-7080
                                                 Facsimile: (617) 830-0327

                                                 *Attorney for Plaintiff and the putative Class*